Good morning, my name is David Porter and I represent the petitioner Tommy Fuentes. Goethe said that the greatest danger to a new truth is an old error. This case epitomizes that saying. Not only was there one old error, there were numerous errors committed by the district court in this case. But let me focus first on the truth. And I'd like to take the court through just a few of the documents in the excerpts of record to show what that truth was. First, was there an agreement as to sentencing? If you look at our excerpts of record at tab 7, page 26, this is the sentencing transcript. Did you just make sure to speak into the mic? Yes, this is the sentencing transcript. And Judge Broadman, the sentencing judge, told the defendant, had you been able to do that, meaning cooperated sentencing, I would have considered, pursuant to our previous agreement, a reduction under the Romero issues. Now that's fully consistent with the plea agreement itself, which is at tab 6 of the excerpts of record. At page 436, this is the standard plea form, and under the heading straight plea, there's a paragraph that begins, no one has made any promises or representations to me of lesser sentence. His initials are not by that box. There's just a check there, meaning that that is not applicable to this case, to this plea. The same thing is reiterated on the next page, page 437, the paragraph that reads, in addition to the above, no one has made any other promises or representations for my guilty plea. Again, his initials are not there. Where his initials are, by almost every other paragraph in the plea agreement. So there was an agreement. What was it? If the court will look at our motion for judicial notice that was filed with this court on March 16th, this is the transcript that was previously sealed by the court and was unavailable. Now it is before this court, and on page 3 of that transcript, the court says, and this is at the first day of trial when the plea was changed, the court says on line 18 of page 3, if he has decided, meaning the defendant, Mr. Fuentes, if he has decided to turn his life around, I will. He can expect me to use my discretion to strike strikes. That was the agreement. If he turns his life around, I will strike the strikes. What happened was he went over to Fresno, to the court over there, was held there for two years, did some cooperation, but at the same time was completely abandoned by his attorney, despite his many calls to the attorney, his letters to the attorney, his family's letters to the attorney, saying, will you please help me cooperate? What you told me, what the judge told us about cooperation, I need to do this in order to get him to strike the strike under Romero, under the interest of justice. And the attorney totally abandoned him. And then in 1999 he comes back to Tulare before Judge Brodman, and here is what Judge Brodman says. At tab 7, page 26, line 21. What happened is you decided to change your life too late. Now, the timing aspect was never part of the agreement, you have to change your life now, you have to change it, you should have changed it before. The agreement was to cooperate in the future, obviously. And he tried to do that as best he could without the assistance, his counsel did not assist him. When he came back, now the judge is changing the nature of the agreement. He's saying, well, yes, and I think everyone agreed that he changed his life around, he made efforts to, and he did meet with the agents, he met with them on numerous occasions. He offered to cooperate, he gave information on a murder and a robbery charge. But now the judge is saying, well, yes, you changed your life around, just as the judge said, if you do that, I will exercise my discretion to strike the strike, but it's too late. Well, courts combed through plea agreements, looking very carefully at what the defendant says to show that there are waivers and so forth, and boy, that defendant is stuck with the words of the plea and what he says during the transcript. What's good for the goose is good for the gander. The court said, if you change your life around, you can expect, I will exercise my discretion under Romero to strike the strike. Now when he comes back and he's done as best he can, and the court says, well, yes, you changed your life around, but it's too late now, that is unacceptable. And a violation of the defendant's right to due process. So let me just stress two important points, I think, for the court to note. First, as the respondent agrees, this case is not controlled by the Anti-Terrorism and Effective Death Penalty Act. It's a standard of review, because there was no adjudication of the merits of the ineffective assistance of counsel claim in the state courts. It was denied for procedural reasons. So there is no requirement that we have to show that the decision was contrary to or an unreasonable application. The second issue is the multiple errors that were made by the district court. First, before the first appeal in this case, the district court actually held that the ineffective assistance of counsel claim was procedurally barred because he didn't raise it on direct appeal. Now, as the respondent has conceded, that was clear error. You don't have to raise an IEC claim on direct appeal in the California courts, even if it is based solely on the record. You can raise it, you're expected to raise it in habeas corpus proceeding in the state court, which Mr. Fuentes did. So that error was conceded on appeal, the case was sent back to the district court. 19 days later, instead of carefully considering this case, which the court certainly should have done, considering how obvious its first error was, instead of carefully considering it, telling the parties you should, you know, you can brief this, the court answered the IEC claim on the merits. The first answer that was filed addressed it solely on procedural grounds. So without even an answer, without even the respondent saying, no, the facts in the petition are not true, and putting those at issue, the district court judge, 19 days after the mandate having been spread from this court, issues an opinion. Issues a final order denying on the merits the IEC claim, without an answer on the merits, without telling Mr. Fuentes in what way the petition was defective, in what way it didn't state a prima facie case for ineffective assistance of counsel. That was clear error under the cases that we've cited. I should know this, but I don't. It looks to me as though this was done directly by the magistrate judge without going through the district judge. Is that the practice in Sacramento? If both parties consent to the magistrate judge's jurisdiction. So this is a consent case. And so maybe that's one of the reasons all of these errors didn't get caught earlier. But really, at this point, the federal defender's office filed the notice of appearance after the remand and said, okay, we're here, we're ready to go, and without any warning to the parties, without any briefing on the issues, the district court just said, well, this IEC claim is denied. And it did so for the most obvious of wrong reasons. First of all, it said the witnesses weren't identified by the petitioner in the petition. But as we've noted in our both briefs, the petition is littered with references to both the names and the titles of the witnesses who would have testified had they been called by the defense attorney, had the defense attorney not been ineffective at his sentencing. He said, oh, well, you haven't shown that you're innocent. You haven't raised a reasonable doubt as to the guilt. That is not required for an IEC claim. IEC as to sentencing merely means that the result of the proceeding would have been different. And as to the sentencing, the issue was whether he changed his life around. And I think that's a good point. Why don't we hear from the state, and then we'll have your response. Thank you. May it please the court, Melissa LaPone for respondent in this matter. This is the second time this matter has come before this court. Previously before YARA, this is my first time on this case. But I do like them. It was remanded for further consideration of this particular claim, the ineffective assistance of counsel claim on the merits. And as counsel has pointed out, that was because the court did make an error and found that it was barred by Dixon. Clearly it was not. At this point, the appellate counsel's problem with the procedure that the district court used is that the government had not had a chance or the warden had not had a chance to respond to the merits of the IEC claim. However, the issue that was before the district court had been fully briefed and, in fact, a traverse, a denial had been filed. And the district court made its decision based on the record before it, which it was entitled to do because both parties had consented to magistrate jurisdiction. And the record, the question is, as counsel argues, is there a, quote-unquote, deal, and what was the nature of the deal? Well, if you look at Petitioner's petition, which is in the excerpts of record, and you look at page 35, Petitioner actually says that the deal was to plead, the agreement consisted of Petitioner exchanging helpful information to multiple parties. Multiple agencies in exchange for his priors to be stricken under Romero. And if you look at the traverse and denial, one of the findings of the court was that there was never really an issue that the court retained its discretion to make a determination based on whether or not the information was helpful. The court had no problem with the fact that the Petitioner had cooperated. The Petitioner had met with law enforcement agencies. The court did not question that. The court questioned the utility of the information he provided. So the problem that Petitioner brings up in his petition is that the counsel did not assist him in meeting with agencies, but the court found no deficiency in his meetings. The court found no deficiency in his cooperation. What does the court have in front of it, the district court have in front of it, when the district court denied the habeas petition? It had in front of it the petition, the answer, the findings and recommendations, the traverse and denial. What findings and recommendations? Those were findings and recommendations that those are not actually in the excerpts of record. There's just the order adopting those findings and recommendations. But you can find those. That's from the first time around? Yes. Those would actually be in the first motion before this Court, and they are in the excerpt. Because the first time around, at least what this Court did was speak not to the substance of the claim, but to whether it was barred or not. And I guess what I'm getting to is I can't figure out where it was the issue was really argued and sharpened and put in front of the judge. I mean, we all know that the Eastern District is overwhelmed, and they have oral arguments sometimes and so forth. But I don't recall seeing one quite this quickly. Well, this leads me to another point. For clarification, it is not that AEDPA does not apply. The issue before the Court is that Sections D-1 and D-2 do not apply. Section E-1 certainly would apply. And that's because if you look at the wording of the statute, there's not been an adjudication on the claim. So D-1 and D-2 would not apply. But if you look at E-1 and the factual findings, that would apply. And in fact, when this was before this Court previously... And remind me, E-1 is? E-1 is the section that says that it's presumed the findings of the state court would be presumed correct. And in this case, this Court, when they had the case previously before it, on page 2 of your prior decision, it says the state court factual finding that Fuentes did not provide useful information is presumed correct and supported by the record. So when this was previously in front of this Court, you found that under subsection E-1, that the finding that the state court made that he did not provide useful information was correct, and in fact also found that it was supported by the record. So what was left for the district court to decide after this Court had already made that judgment? Was there no argument that his lawyer had failed to help him develop the evidence or submit the evidence that might have been helpful? Well, the argument that he has made is basically that the lawyer did not call every single possible witness. And what the lawyer did is he called one witness who was essentially a coordinator with law enforcement agencies. But the fact of the matter is that the trial court found no deficiency in his cooperation. The lawyer could have called five more witnesses. This witness testified that he provided information on homicides, that he provided information on the gang structure. What the witness said is that all of the information related back basically, or most of it, except for some of the prison structure information, which wasn't terribly helpful, related back to 1995 when he had been out of custody. So it was stale and it was not useful. He could have called all of these witnesses. It would not have made a difference, because the court didn't find that his cooperation was a problem. They found that the information he provided was not helpful. And to the extent that there was a deal that he provide helpful information, he did not. Originally, the law enforcement people were very enthusiastic about his help. And yet they knew he'd been in prison since 1995. So what were they expecting? Your Honor, you are referring to a portion of the transcript which was never part of the state record. So it is our position that it's not properly before this court. But to the extent that it is the transcript to which you're referring to that law enforcement was enthusiastic about it, it is a sealed transcript that was never in the state record. However, to the extent that it's before the court, it's helpful to our position, because the law enforcement officers that they had discussed were federal agents. And in fact, the cooperation he gave were to local agents. So at the time, it seems that the attorney represented quite truthfully that people were enthusiastic in talking with him. So to the extent, and in fact, it's interesting, because if you look at petitioners, habeas petitions all the way through, he says he was to provide this information to the people he provided it to. Well, if you look at that sealed transcript, obviously that's incorrect. Either his memory was faulty or he's lied in his petitions about that. But to the extent that the sealed transcript shows that he was not being honest or has a faulty memory in his petitions, it's helpful to the people. Because it's obvious that even though he's maintained throughout all of his state petitions and his federal petition that he was to meet with the people he met with, in fact, that was not the nature of the deal. But what's crucial to remember is that the state court put it all out on the record. The state court in this matter said, I've made you no promises, your life is entirely in my hands. All the state court agreed to do was consider the quality of his cooperation. This was a two strikes case. He was facing another felony offense in another court, and what the court did was give him an opportunity. He said, based on your criminal history, and that's clearly in the record, I would not consider striking this strike. I don't want to hear from probation. Nothing they can tell me. I know you've been to Pelican Bay. And in fact, if you look at his record, he was convicted of an attempted murder, an attempted robbery, and a robbery. So it's clear the court said, based on your record, there's no reason for me to consider my discretion under Romero. But what I will do is if you cooperate with law enforcement, I'll consider what they have to say. I'll consider the quality of your cooperation. This was his best shot. This was his best shot. What does quality of cooperation mean? Do you do your best, or does it have to be something that they wanted? Unfortunately, that's not really spelled out. But to the extent that it's not spelled out, it's clear from the record that what he was supposed to do is provide useful information. There were people that he was supposed to talk to. Anywhere in that exchange that had to be useful, or just a quality of cooperation? If you look at it, and I believe it is the excerpts of record where it's on page 4 of the plea agreement, the judge does say that, essentially, it depends on what the court says. It depends on what these people have to say. I want to hear from law enforcement. So the presumption is that he will be working with them on active cases. And if you are going to consider the sealed transcript, it does discuss active cases. Well, the information that he ended up providing to them had nothing to do with active cases. It had to do with information dating back to 1995 and some information dealing with the structure of the northern structure prison gang. So to the extent that you do consider that sealed transcript, it indicates that it was ongoing investigations that law enforcement was interested in. And he did not provide information for the ongoing investigations. Are there any further? There is, I believe, again, if you are going to consider that sealed transcript, I believe that it is, and in fact in the court of appeal record you can see it in their factual findings, it's clear he was supposed to provide information about the criminal street gang to which he was involved, and it's also clear he was to provide information about homicides. But it would be unusual to say the least that to say simply to meet with law enforcement would engender a deal, because he could meet with law enforcement and read Dr. Seuss. I mean, obviously implicit in this deal and the fact that there are going to be people testifying on his behalf is that he provides useful information. Couldn't the counsel, if he were contacting him and working with him, couldn't he have helped in this regard? Well, Your Honor, that's not really the standard under Hill. I mean, that's a speculative question, and I want to make sure I can answer it. Excuse me. We're talking about whether his counsel was effective or not, and his allegation is he wasn't, because he wasn't helping him to try to provide the information that would have fit within what the court wanted. Well, assuming that's correct, then I suppose my response would be there would be no prejudice, because the trial court didn't find any deficiency in his cooperation. The trial court found a deficiency in his information. So if you were to assume that counsel could have further assisted him and did not, then my response would be you could go directly to prejudice, because it's clear that the court didn't find any deficiency with his cooperation. But that circles back to your point that the cooperation is not merely that he's cooperative in the sense that he smiles and answers the telephone or whatever he's supposed to do, but that he provides useful information, and then the issue is what would counsel have been able to do in assisting him to provide helpful information, and because of the state of the record, we don't know. Well, with all due respect, I believe the issue under Hill is whether or not he gave his advice, if he was functioning as counsel guaranteed by the Sixth Amendment, when he gave the advice to plead guilty, and whether or not, as far as the prejudice analysis goes, a petitioner would have accepted that plea. So you're saying that there's no ineffective assistance of counsel argument in the sense of post-conviction, post-plea assistance? The Supreme Court has not come out with this. This is fully laid out in the brief. But I'm trying to figure out, so your argument is the counsel knows no further obligation once the plea has been entered into with respect to the IAC claim? Is that your argument or not? Yes. I mean, this Court has said in Sutton that, and if you look at Hill and all of its progeny... My argument, if you look at the district, to the extent that the district court considered under Hill whether or not there was error or prejudice, the district court reasonably found, based on this record, that there was no error because counsel reasonably advised him to accept this agreement because this was his best chance at receiving. I've got a distinct question, and I think I know the answer, but it can be a yes or a no. I'll try to phrase it so it can be a yes or a no. Are you saying that there is no argument under an IAC claim when the claim is that after entering into the plea, my counsel abandoned me so that I was unable to fulfill the conditions of the plea that might have given me a lower sentence? Is there no lawyerly obligation under the Sixth Amendment once that plea is entered? Is that your argument? I have not seen a Supreme Court... Is that a yes or a no? Is that your argument? I don't know that I could paint in such broad strokes, so I'd have to say no, that's not my argument, if that's the way that it's going to be encapsulated. That would be a very broad statement. But I would say in this particular case that when you look at the law, that in a plea agreement, the question is whether or not he... There was error. There was no error. The question is whether or not he was prejudiced. It's not whether it's a good plea agreement. And the argument is not whether it was good lawyering to let him enter into it. The argument is, after the plea was entered into, he abandoned him. That's the argument. Well, he does make that assertion, but that's not actually supported by the record. He was transferred over to Fresno. The question now is, did the district court cut off the proceedings so that the record couldn't be developed? Did the district court cut off... That's the question that I see is in front of us. Do we remand for development of the record on that question? And Petitioner had a full and ample opportunity to brief this. And in fact, if you look at what he says, the only person who might be prejudiced by the district court turning around and making this decision so quickly would be the people who failed to respond to the merits of this claim. The people did not have an opportunity to be heard on the merits. The Petitioner has had the full opportunity to be heard on the merits, just not with counsel. But he's not entitled to counsel. He has no absolute right to counsel. Okay. Anybody has counsel? He does at this point, but what he would like is another bite at the apple with counsel. It's not that he didn't have an opportunity to develop the argument. I think we got the argument. Thank you. Thank you very much. Mr. Porter, would you like a minute? Thank you. I think Judge Hugg's question goes to the heart of the case. What were the terms of the agreement? Was there something in the agreement that said the information had to be helpful? The opposing counsel cited to page 35 of the petition, of my client's petition to say, oh, yes, the agreement said it had to be helpful. That's not what my Petitioner said. The Petitioner just said Petitioner's sentencing was waived while he was transferred and assisted with helpful information. He is asserting that he gave helpful information, but he's not saying that that was part of the agreement. That was a requirement of the agreement. And now we have the sealed transcript, which is properly before this Court on a motion for judicial notice that has not been opposed by the government, that says, where the judge says, if he's decided to turn his life around, he can expect me to use my discretion to strike strikes. Judge Hugg, that's the agreement. Did he turn his life around? Not is he going to provide useful information, information that is going to be testified as useful by law enforcement. His claim is not that he, that his ineffective assistance counsel claim is not limited to the fact that he only called one witness at the sentencing. He could have called other witnesses, and we say that that is ineffective. But it is also that he did nothing during the two years to help him cooperate. So in light of the numerous errors by the district court, we request that this case, that the judgment be vacated and the case remanded for further proceedings on the ineffective assistance of counsel claim. Okay, thank you. The case of Fuentes v. Brown is now submitted for decision.
judges: Hug, Fletcher, Clifton